Lillie B. Carr et al. [1] v. Commissioner. Carr v. Commissioner
Docket Nos. 29444, 29511, 29512, 29516.
United States Tax Court
1952 Tax Ct. Memo LEXIS 249; 11 T.C.M. (CCH) 406; T.C.M. (RIA) 52118; April 22, 1952
*249 1. Three petitioners admit their liability for any estate tax due. Certain transfers made by decedent within two years prior to his death were included by the Commissioner in the value of the gross estate as gifts made in contemplation of death. Held, the gifts were made from motives associated with life and not death, and were not made in contemplation of death. The Commissioner erred in including such property in the decedent's estate under section 811 (c) of the Internal Revenue Code. 2. The fourth petitioner denied the respondent's allegation that she was liable as transferee and as transferee of a transferee of property in the estate, and at the hearing no evidence was submitted relating thereto. Held, the petitioner is not liable for any deficiency in estate tax, the burden of proof in respect thereto being on the Commissioner, section 1119 of the Internal Revenue Code. William G. Cavett, Esq., for petitioner Lillie B. Carr; Lewis R. Donelson, III, Esq., 1224 Commerce Title Bldg., Memphis, Tenn., for petitioners C. H. Carr; C. H. Carr, Fiduciary of Estate of B. C. Carr, Deceased; and Esther Carr Moore. Homer F. Benson, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These four proceedings which have been consolidated arise out of an estate tax deficiency of $24,066.09 determined against the estate of B. C. Carr, deceased. Certain payments were made on the deficiency to the collector but a balance of tax remained due. In separate notices of deficiency the Commissioner determined for assessment the amount of $6,016.52 against each of the following: (1) Lillie B. Carr (Docket No. 29444) as a transferee and as transferee of a transferee of property in the estate, (2) C. H. Carr (Docket No. 29511) as transferee and beneficiary of property of the estate, (3) *251 C. H. Carr (Docket No. 29512) personal liability as a fiduciary for estate tax due from the estate, and (4) Esther Carr Moore (Docket No. 29516) as transferee and beneficiary of property of the estate. Petitioners here contest the estate tax liability of the estate of B. C. Carr, deceased, as determined by respondent. Four adjustments to the net estate were made by respondent in the notice of deficiency to the estate, each adjustment increasing the value of the net estate as indicated: (1) Real estate
$ 1,000
(2) Transfers in contemplation of
death
132,000
(3) Administrator's commissions
1,000
(4) Attorney's fees
500
Petitioners in Docket Nos. 29511, 29512, and 29516 admit liability for such deficiency in tax as may be owing by the decedent's estate. Petitioner in Docket No. 29444 denies each and every averment in respondent's answer to her petition. In answer to the petition in Docket No. 29444 the respondent made the following affirmative allegations: "1. On October 15, 1947, an estate tax return was filed by C. H. Carr, administrator of the estate of B. C. Carr, who died on August 28, 1946, in which liability for estate tax in the amount of $146.31 *252 was reported. "2. An examination made in connection with the estate tax return disclosed a deficiency in estate tax of $24,066.09, as shown by the notice of deficiency dated October 24, 1949. "3. By payments made prior to April 14, 1950, the deficiency in estate tax which was assessed against the estate of B. C. Carr on January 5, 1950, was reduced to $6,016.52, as disclosed by the notice of deficiency attached to the petition as amended as Exhibit A. "4. On the date of the distribution of the assets of the estate of B. C. Carr there was estate tax due and owing to the United States by the said estate. "5. As one of the beneficiaries of the estate of B. C. Carr, petitioner received as her share of the estate, distribution of assets having a fair market value in excess of the amount of deficiency in estate tax. "6. As a result of the distribution the estate of B. C. Carr was rendered financially unable to pay the deficiency in estate tax due the United States. "7. By reason of the aforesaid distribution of assets and the receipt thereof by the petitioner herein, the said petitioner became liable as transferee within the meaning of section 900 of the Internal Revenue Code *253 , and as such is liable as a transferee for the payment of the aforesaid deficiency, plus interest as provided by law." Petitioners do not contest the respondent's adjustments 1, 3, and 4 which increased the value of decedent's net estate. Therefore, two issues are presented, first, were the gifts made by decedent to his children made "in contemplation of death" within the purview of section 811 (c) of the Code, and, second, whether the petitioner in Docket No. 29444 is liable for the estate tax as transferee of the estate under the provisions of section 900 of the Code. The tax return of the decedent's estate was filed with the Collector of Internal Revenue for the District of Tennessee. On October 24, 1949, C. H. Carr, fiduciary of the estate of B. C. Carr, deceased, received a notice of deficiency of $24,066.09 in the tax of the decedent's estate. Of this deficiency in tax the sum of $20,353.24 was paid on January 5, 1950. After this payment there remained due a balance of tax and interest due by the estate in the amount of $6,784.24 as of February 1, 1950. Each of the four deficiency notices relating to petitioners herein was dated April 14, 1950. At the hearing an amended *254 petition was filed in Docket No. 29512, C. H. Carr, Fiduciary of Estate of B. C. Carr, Deceased, claiming a refund of estate tax paid in the amount of $20,353.24. This amended petition closes with the following prayer: "WHEREFORE, Petitioner prays that this Honorable Court may hear the proceedings and determine that there is an overpayment of estate taxes and interest in the amount of $20,353.24, plus statutory interest from February 1, 1950, and that such amount was paid by the petitioner within two years before the filing of this Petition." Facts as to First Issue The decedent B. C. Carr, sometimes hereinafter referred to as Benjamin, died on August 28, 1946. During his lifetime he made two transfers which are in question here: gifts amounting to $52,000 were made on November 8, 1945, and gifts amounting to $80,000 were made on February 23, 1946. These gifts, which were made in the form of cash, were made to decedent's children and grandchildren. The first transfers were made as follows: Donee
Amount of Gift
C. H. Carr
$13,000
W. B. Carr
13,000
Esther Carr Moore
13,000
Elizabeth O. Harper
13,000
Total transfer
$52,000 The second transfers were made *255 as follows: Donee
Amount of Gift
W. B. Carr
$20,000
Esther Carr Moore
17,000
Charles C. Moore
3,000
Elizabeth O. Harper
17,000
Billy Harper
3,000
C. H. Carr
10,000
Lucy W. Carr
4,000
Ben W. Carr
3,000
June Lawrence
3,000
Total transfer
$80,000
In his determination of the estate tax deficiency the Commissioner has determined that these gifts were made in contemplation of death and has included in the net estate the gifts amounting to $132,000. Decedent, born on July 11, 1861, died on August 28, 1946, at Pocahontas, Tennessee, his residence, at the age of 85, and was survived by his wife Elizabeth, whom he married in 1885. They had five children, of whom three were living at the time of the gifts and two were living at the time of the hearing. The decedent was born in McNairy County, Tennessee. Sometime after his marriage, but before 1900, he, with his family, moved to an old house in Hardeman County, Tennessee, which adjoins the county of his birth and he and his wife resided in this house until his death. The decedent had been engaged in the sawmill business and timber business, but some years prior to his death he retired from the sawmill *256 business. He continued to own timberland and at the time of his death owned over 1,200 acres of timberland and cutover timber land in McNairy County, Tennessee. He invested his money in timberlands, beginning this practice prior to World War I. The decedent was an unusually healthy and vigorous man and on numerous occasions he spoke of himself as being as "healthy as a horse." He was proud of his health, had never been sick, and with the exception of one tooth had all of his permanent teeth. The only pair of glasses he ever had was a pair that he paid a dollar for, and he read the newspapers without his glasses. On November 7, 1936 or 1937, Benjamin fell out of a barn loft and broke his hip. A physician was called and he advised Benjamin to go to the hospital in Memphis where his hip could be X-rayed and placed in a cast. Benjamin discussed it with his wife Elizabeth and she promised to care for him so he refused to go to the hospital. He remained in bed at his home for a long time, but he recovered to the extent that he walked with a limp and sometimes used a cane. On occasion Benjamin would say "I have the promise of a hundred years, and I think I will get every bit of it." Benjamin *257 explained to his son that he expected to live even longer because of his hip injury for thereafter he took life easier. From the time of his hip injury until March 2, 1946, Benjamin received no medical attention. On that date a physician was called to treat his bad cold and sinus infection. A prescription was filled out and the drug was purchased for the decedent but he refused to take the medicine, saying "I will pay for it, but I won't take it." Subsequently, until his last illness, the decedent was visited by a physician five times. On August 26, 1946, two days prior to his death, the decedent contracted pneumonia which caused his death. Throughout his lifetime the decedent was a thrifty and frugal man. He never owned an automobile, said he never wanted to, even though he could afford one. He was a hard worker and at the time of his marriage agreed with his wife never to buy anything unless they could pay cash for it. Decedent handled all the money and told his wife "Now, we are going to have plenty to eat. I am going to buy the grub, and I want you to cook it. Outside of that, we won't have anything for a show." Decedent and his wife lived in accordance with these principles. *258 The decedent sold some timber in 1944, receiving as consideration cashiers' checks on the Selmer Bank & Trust Company totaling $26,500. The proceeds of this sale are not involved here. In 1946, the bank notified the decedent through his son that he was overdrawn in his account. The decedent told his son that he thought he had plenty of money on deposit in the bank. Thereupon, decedent went over to his trunk, removed the cashiers' checks from the trunk and had his son deposit them to decedent's account. Among the assets of decedent at the time of his death were two United States bonds, one of $5,000 denomination and the other of $1,000 denomination which were called on June 15, 1940, 14 checks in the amount of $101.25 each which checks had been received by decedent over a period of years and in payment of interest on these bonds, and over $50,000 in cash on deposit in two banks. The money which constituted the gifts in question was received by decedent upon the sale of his timber. The making of the gifts was done almost simultaneously with the sale of timber. In both instances the timber was sold to E. S. Miller of Jackson, Tennessee. Negotiations leading up to the sales took *259 place over a period of two years or more. The first sale was made to Miller on November 8, 1945, at a price of $60,000 and consisted of a 250-acre tract including land and timber, except as to a small acreage on which only the timber was sold. Miller was willing and did accept a quitclaim deed for the land and timber, though he preferred a warranty deed. Miller refused, however, to accept a deed signed only by the decedent and Miller insisted that the decedent's wife join in the conveyance. Though he tried to do so, the decedent was unable to persuade Miller to purchase the property without the signature of Elizabeth Carr, and in closing the sale it was necessary for decedent to secure the signature of his wife Elizabeth. The decedent had held this timberland for a long time. He was waiting for the time when he could receive the maximum possible price. In 1945, the decedent concluded that this was a good time to sell the timber, that prices had climbed for a long time and that they were at about their peak and that before too long prices of timber would fall. The decedent started his married life without capital, but through hard work and thriftiness he advanced his fortunes. When *260 his children married he helped them in securing their homes, but thereafter gave them no financial assistance until the gifts in question. In the Spring of 1945, Elizabeth asked her husband to help the children but he refused, and she reproached him. She was a dutiful wife and never in their married life of 60 years had she "contraried him about anything," and when asked to do so she had always joined him in signing deeds to timberlands. However, she then made up her mind never to sign another deed for timberlands unless the money was given to the children who needed it for medical care, operations, and for comfortable living. Elizabeth did not tell her husband of her decision until early in November 1945, when Benjamin told her that he had decided to sell a tract of land to Miller. When she told her husband of the conditions of her signing the deed, Benjamin said he would sell the timberlands without her signature. For the first time in their married life Elizabeth had challenged her husband. The next day Miller came to see Benjamin to complete the terms of the sale, but Miller and the decedent were unable to come to terms and Miller left saying he would not return unless requested *261 to in order to trade. Two or three days later at the request of the decedent, Miller returned. After a long discussion in which Miller insisted that the deal would not be acceptable without Elizabeth's signature, the decedent called Elizabeth into the room to sign the deed. She again challenged her husband, telling him in the presence of Miller that she would not sign the deed unless the money received for the timber and timberland was given in four equal parts to the three children and to Elizabeth Harper, a grandchild. Benjamin acceded to his wife's demands and the timberland was sold on November 8, 1945, for $60,000. Checks in payment of the consideration were made out by the purchaser in favor of the decedent's donees as follows: Payee
Amount
William B. Carr
$13,000
Charles H. Carr
13,000
Esther Carr Moore
13,000
Elizabeth Owen Harper
13,000
$52,000 The balance of the purchase price was retained by Benjamin, as he explained, for the payment of taxes on the profits resulting from the sale and gift taxes. After decedent had made the gifts he expressed to his wife pleasure that he had done so. Thereafter, on February 23, 1946, Benjamin Carr made a second *262 sale of timber and timberlands to E. S. Miller and received therefor $100,000. This sale, upon the insistence of Elizabeth, was handled in much the same way. On February 23, 1946, decedent made gifts to his children and grandchildren totaling $80,000. Decedent retained $20,000 with which to pay taxes on profits resulting from the sale, and gift taxes. None of the children or grandchildren of Benjamin and Elizabeth Carr had previously been informed of the decedent's intention to make these gifts. These gifts did not constitute the entire estate of the decedent. Benjamin died leaving cash and United States bonds totaling over $58,000 and over 1,400 acres of land, much of which contained timber. At the time of his death Benjamin's debts were nominal in amount. In the course of negotiations with the decedent, E. S. Miller as a selling point discussed tax savings features which might be utilized by decedent in the sale of timber. Benjamin indicated that he was not interested in the tax liability in any manner and refused to discuss or consider the matter. In making the transfers here in question Benjamin was motivated primarily by his desire to secure what he considered a good price *263 for his timber, and that this be done regardless of the conditions, Also, he was interested in keeping peace in his household and in satisfying his wife's concern over the welfare of her children and grandchildren. The gifts which decedent made to his children and grandchildren were not made in contemplation of death and were not testamentary in character, but were made from motives associated with life rather than death. After the hearing of these proceedings in Memphis, Tennessee, in December 1951, the parties filed a stipulation in Docket No. 29512 which reads as follows: "It is hereby stipulated by the parties to the above-entitled proceeding that the Certificate of Assessments and Payments (Form 899) attached hereto correctly reflects the amount of estate tax paid by the Estate of B. C. Carr as of January 21, 1952." The certificate shows that $146.31 was paid on November 21, 1947, and $20,353.24 was paid on January 5, 1950. The stipulation and certificate of assessments and payments attached thereto as an exhibit are incorporated herein by this reference. Opinion Issue 1 BLACK, Judge: It is not practicable to discuss herein the numerous cases decided since United States v. Wells, 283 U.S. 102. *264 Each case involving the issue of "contemplation of death" must naturally depend largely upon its own facts. Emma Peabody Abbett, 17 T.C. -, promulgated February 14, 1952. From the evidence presented at the hearing we have found facts which, we think, are sufficient to establish that the gifts in question were not made by decedent in contemplation of death nor were they intended to be testamentary in character. The dominant motives which prompted decedent to make the gifts were associated with life, and not with death. We, therefore, hold that respondent erred in including the value of these gifts in decedent's gross estate under the provisions of section 811 (c) of the Code. Issue 2 Respondent contends that petitioner in Docket No. 29444 became liable as transferee within the meaning of section 900 of the Internal Revenue Code and, as such, is liable as a transferee for the payment of the tax deficiency in the estate of B. C. Carr, deceased, plus interest as provided by law. In support of his contention the respondent made allegations of seven facts, each of which was denied by the petitioner in Docket 29444. At the hearing respondent presented no evidence *265 in support of his allegations, nor is there any fact in the record indicating that the petitioner in Docket No. 29444 is liable as a transferee or as a transferee of a transferee. It is provided in section 1119 (a) of the Internal Revenue Code that: "SEC. 1119. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES. (a) * * * In proceedings before the Board [Tax Court] the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax." It is, therefore, determined that petitioner in Docket No. 29444 is not liable as transferee for any taxes and interest due by the estate of B. C. Carr, deceased. In Docket No. 29444 decision will be entered for the petitioner. In Docket Nos. 29511, 29512, and 29516 decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: C. H. Carr; C. H. Carr, Fiduciary of Estate of B. C. Carr, Deceased; and Esther Carr Moore.↩